# UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **KURT BOYLSTEIN,** | : | **Civil No.  4:18-CV-174** |
| | : | |
| **Plaintiff** | : | |
| | : | |
| **v.** | : | |
| | : | **(Magistrate Judge Carlson)** |
| **NANCY A. BERRYHILL,** | : | |
| **Acting Commissioner of Social** | : | |
| **Security,** | : | |
| | : | |
| **Defendant** | : | |

## MEMORANDUM OPINION

### I.      Introduction

For Administrative Law Judges (ALJs), Social Security disability determinations frequently entail an informed assessment of competing medical opinions coupled with an evaluation of a claimant's subjective complaints. Once the ALJ completes this task, on appeal it is the duty and responsibility of the district court to review these ALJ findings, judging the findings against a deferential standard of review which simply asks whether the ALJ's decision is supported by substantial evidence in the record,  see 42 U.S.C. §405(g); Johnson v. Comm'r of Soc. Sec., 529 F.3d 198, 200 (3d Cir. 2008); Ficca v. Astrue, 901 F. Supp.2d 533, 536 (M.D.Pa. 2012), a quantum of proof which "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a

reasonable mind might accept as adequate to support a conclusion." Pierce v. Underwood, 487 U.S. 552, 565 (1988).

In the instant case, an ALJ denied a disability application submitted by Kurt Boylstein, a man in his 40's whose self-reported activities of daily living disclosed a significant level of physical and emotional functioning. After reviewing this evidence, the competing medical opinions offered by Boylstein's physician and a state agency expert, and taking into account his activities of daily living, the ALJ denied this claim. Mindful of the fact that substantial evidence is less than a preponderance of the evidence but more than a mere scintilla, Richardson v. Perales, 402 U.S. 389, 401 (1971), we find that substantial evidence supported the ALJ's findings in this case. Therefore, for the reasons set forth below, we will affirm the decision of the Commissioner denying this claim.

## II. Statement of Facts and of the Case

### A. Medical and Procedural History

On September 15, 2014, Kurt Boylstein applied for disability insurance benefits pursuant to Title II of the Social Security Act, alleging the onset of his disability in July of 2011. (Tr. 20.) Boylstein was born in 1967 and was in his 40's at the time of the alleged onset of this disability. (Tr. 26.) He had a high school education and had previously been employed as a correctional officer. (Tr. 26-7.)

According to Boylstein he was disabled due to the combined impact of degenerative disc disease, obesity, bi-polar and post-traumatic stress disorders. (Tr. 22.) Despite these impairments, Boylstein described an active and full lifestyle in his disability application and at his disability hearing. For example, in October of 2014 Boylstein described his activities of daily living in the following terms:

> My whole day is spent caring for my son. I might do some reading, clean the kitchen, do laundry, put his toys away. When my wife gets home, I usually read, shower, cook breakfast and lunch.

(Tr. 172).

Boylstein further explained that that he had no problems with his personal care, (Tr. 172), was able to go out alone and drive, (Tr. 173), shopped for groceries, books, and music, (Tr. 174), and enjoyed an array of hobbies including reading, watching sports and old movies, and walking. (Tr. 175.) While reporting episodes of anxiety, Boylstein also described an intellectually and physically demanding lifestyle, stating that he reads every day, walks three to four times a week without problems, (Tr. 175), and is "fine" walking a couple of miles. (Tr. 176.) Boylstein also reported that he regularly exercised at a gym (Tr. 175) and testified at his October 2016 disability hearing before the ALJ that up until "a couple of months" prior to the hearing, he "was going to the gym every day, five days a week." (Tr. 51.)

At the administrative hearing on October 19, 2016, Boylstein also testified that that since the alleged onset of his disability in 2011, he had vacationed in Tennessee, and traveled to Niagara Falls and Gettysburg. (Tr. 45.) In addition to providing child care for his son while his wife worked,[1] Boylstein described a significant level of intellectual functioning in the form of recreational reading, testifying that: "I read pretty much anything, horror, science fiction, true crime, historical fiction-I'm reading a lot of right now," and stating that he was still able to read "bigger books, like 4 or 500 pages" in just "a week or two." (Tr. 52.)

Boylstein's medical records also generally presented a picture of a person who faced some impairments, but retained the capacity to engage in substantial activities. For example, in February and July of 2016 Boylstein's primary care physicians reported that his strength was 5/5 bilaterally, the motor strength in his extremities was intact, and his reflexes were normal. (Tr. 433.) In addition these examinations revealed that Boylstein had full range of motion with no deformities or effusions. (Tr. 436.). Likewise, Boylstein was described as displaying a normal affect, being alert and oriented, and demonstrating articulate and fluent speech. (Tr.

---

[1] Boylstein described this child care and work arrangement in the following terms: "[b]ecause one of the things we looked into, other than me not being able to work, was that a consistent babysitting would be almost my paycheck for five days a week," he had elected to remain at home providing child care while his wife worked. (Tr. 53.)

433.) Boylstein himself reported to his primary care physician that he was "[d]oing well overall" and "[d]oing well" with his depression and anxiety. (Tr. 435.)

With respect to Boylstein's emotional state, the principal issue presented in this appeal, the record before the ALJ presented a mixed and equivocal picture of the degree to which Boylstein's emotional impairments were wholly disabling. Boylstein had treated these mental health conditions through Commonwealth Affiliates Services, Inc. from January 2010 to August 2016. (Tr. 339-419.) These treatment records revealed that Boylstein was being treated for depression and anxiety through medication and counseling. (Id.) In the course of this treatment, he reported greater difficulty with anxiety than with his depression, but Boylstein consistently presented as cooperative and appropriate, and denied severe symptoms such as suicidal or homicidal thoughts, delusions or hallucinations. (Id.)

Even though the medical records seemed to reflect a fairly constant state of care and reported no acute episodes, on September 6, 2016, Michael S. Greevy, Ph.D., a psychologist with Commonwealth Affiliates Services, Inc., completed a mental impairment questionnaire for Boylstein in which he opined that Boylstein was uncomfortable around others, distractible, self-doubting, easily tired, over-reactive to criticism, aloof, anxious, and unfocused. According to Dr. Greevy Boylstein was unable to maintain attention for two-hour segments, make simple

work-related decisions, perform at a consistent pace with excessive breaks, respond appropriately to changes in a routine work setting, and deal with work stress. (Tr. 335.) Dr. Greevy also found that Boylstein had marked functional limitations in maintaining social functioning and with concentration, persistence, or pace, (Tr. 337), and would be absent from work about four days a month due to his impairments or treatment. (Tr. 338.) Accordingly, Dr. Greevy expressed the opinion that Boylstein's mental impairments were wholly disabling. (Tr. 419.)

Dr. Greevy's opinion stood in stark contrast to Boylstein's reported activities of daily living and was also contradicted by the opinion of an examining consultative source, Michael DeWulf, Ph.D., who conducted a mental status examination of Boylstein on February 10, 2015. (Tr. 289,) Dr. DeWulf's report of this examination reflected that Boylstein drove to this examination, (Tr. 289), was casually dressed and well groomed, (Tr. 290), and displayed normal posture and motor behavior, (Tr. 290), as well as appropriate eye contact. (Tr. 290.) Boylstein's speech was fluent, his voice was clear, and his expressive and receptive language was adequate. (Tr. 290.) His thought process was coherent and goal-directed with no evidence of hallucinations, delusions, or paranoia. (Tr. 290.) His affect was appropriate, he was oriented, and his attention and concentration appeared intact. (Tr. 291.) His insight and judgment were good. (Tr. 291.)

Boylstein also confirmed for Dr. DeWulf his ability to perform a full range of activities of daily living, explaining that he was able to dress, bathe, and groom himself; (Tr. 291), he cooked and prepared food; (Tr. 291), performed general cleaning and laundry; (Tr. 291), and was able to shop, manage money, drive, and use public transportation. (Tr. 291.) His hobbies and interests included coin and stamp collecting, collecting memorabilia and books, listening to music, watching television, visiting the Friendship Center, exercising, and reading. (Tr. 291.)

Based upon this examination, and after taking into account Boylstein's self-reported activities, Dr. DeWulf disgnosed Boylstein with bi-polar and post-traumatic stress disorders, but found that these impairments did not appear to be significant enough to interfere with Boylstein's ability to function on a daily basis. (Tr. 292.) Instead, Dr. DeWulf found that Boylstein's ability to understand, remember, and carry out instructions was not affected by his impairments; he had no limitations in interacting appropriately with the public; he had mild limitations in interacting with supervisors and co-workers; and he had mild limitations in responding appropriately to usual work situations and to changes in a routine work setting. (Tr. 294.)

## B.     The ALJ's Decision

It was against this medical and factual backdrop that the ALJ conducted a hearing into Boylstein's disability claim on October 19, 2016. (Tr. 33-66.) Boylstein and a vocational expert appeared and testified at this hearing. (Id.) Following this ALJ hearing, on December 30, 2016, the ALJ issued a decision denying this application for disability benefits. (Tr. 17-28.)  In this decision, the ALJ first found that Boylstein met the insured requirements of the Social Security Act through December 31, 2016. (Tr. 22.) At Step 2 of the five-step sequential analysis process that applies to Social Security disability claims, the ALJ concluded that Boylstein experienced the following severe impairments: degenerative disc disease, obesity, bi-polar and post-traumatic stress disorders. (Tr. 22.) At Step 3 of this sequential analysis, the ALJ determined that none of Boylstein's impairments met a listing that would define him as *per se* disabled. (Tr. 22-24.)

Before considering Step 4, the ALJ fashioned Boylstein's residual functional capacity.  In this regard, the ALJ concluded that Boylstein retained the residual functional capacity to perform:

> [M]edium work as defined in 20 CFR 404.1567(c) except he can never climb ladders, ropes, or scaffolds. The claimant can frequently stoop, kneel, crouch, or crawl. He should avoid concentrated exposure to hazards, including unprotected heights and moving mechanical

parts. He can occasionally [interact] with supervisors and coworkers, but never interact with the public. He is limited to simple, routine tasks, but not at a production rate pace, with no more than an occasional change in the work setting. He will be off task five percent of the day.

(Tr. 24.)

In reaching this conclusion the ALJ canvassed the medical opinion and clinical evidence, along with the Boylstein's reported activities of daily living. (Tr. 24-26.) In reviewing this medical evidence, the ALJ gave no single opinion controlling weight but found that Dr. DeWulf's opinion that Boylstein's emotional impairments were not disabling was entitled to greater weight than Dr. Greevy's treating source opinion that Boylstein was disabled from any employment. In reaching this judgment, the ALJ noted that Dr. DeWulf's opinion was more consistent with Boylstein's self-described activities of daily living and found that Dr. Greevy's more restrictive opinion concerning Boylstein's limitations was not borne out by the doctor's own, fairly conservative treatment notes. The ALJ further concluded that Boylstein's statements regarding the severity and persistence of his symptoms were not entirely consistent with the evidence, including his own physically and intellectually active lifestyle. (Id.)

Having made these findings, the ALJ concluded at Step 4 of this sequential analysis that Boylstein could not return to his past relevant work, but concluded at

Step 5 that he could undertake other jobs that existed in significant numbers in the national economy. (Tr. 26-28.) Accordingly, the ALJ determined that Boylstein was not disabled and denied his claim for disability benefits. (Id.)

This appeal followed. (Doc. 1.)

On appeal, Boylstein advances a threefold attack upon the ALJ's finding that he was not disabled. First, Boylstein asserts that the ALJ improperly assigned little weight to the treating source opinion of Dr. Greevy. Second, Boylstein argues that the ALJ's residual functional capacity assessment is deficient because it is not fully supported in every respect by a medical opinion, thus creating an "evidentiary deficit" in Boylstein's view. Third, Boylstein insists that the ALJ erred in his evaluation of the persistence and severity of his emotional impairments. This case is fully briefed and is now ripe for resolution.

For the reasons set forth below, under the deferential standard which applies to review of ALJ disability determinations, we find that substantial evidence in the record supported each of the adverse rulings made by the ALJ which Boylstein now challenges on appeal. We further find that the ALJ's decision sufficiently articulates the factual underpinnings of these determinations in a way which permits meaningful judicial review of this decision. Therefore, we will affirm the decision of the Commissioner.

## III. Discussion

### A. Substantial Evidence Review – the Role of this Court

When reviewing the Commissioner's final decision denying a claimant's application for benefits, this Court's review is limited to the question of whether the findings of the final decision-maker are supported by substantial evidence in the record. See 42 U.S.C. §405(g); Johnson v. Comm'r of Soc. Sec., 529 F.3d 198, 200 (3d Cir. 2008); Ficca v. Astrue, 901 F. Supp.2d 533, 536 (M.D.Pa. 2012). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Pierce v. Underwood, 487 U.S. 552, 565 (1988). Substantial evidence is less than a preponderance of the evidence but more than a mere scintilla. Richardson v. Perales, 402 U.S. 389, 401 (1971). A single piece of evidence is not substantial evidence if the ALJ ignores countervailing evidence or fails to resolve a conflict created by the evidence. Mason v. Shalala, 994 F.2d 1058, 1064 (3d Cir. 1993). But in an adequately developed factual record, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ's decision] from being supported by substantial evidence." Consolo v. Fed. Maritime Comm'n, 383 U.S. 607, 620 (1966). "In determining if

the Commissioner's decision is supported by substantial evidence the court must scrutinize the record as a whole." Leslie v. Barnhart, 304 F. Supp.2d 623, 627 (M.D.Pa. 2003).

The question before this Court, therefore, is not whether the claimant is disabled, but rather whether the Commissioner's finding that he is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law. See Arnold v. Colvin, No. 3:12-CV-02417, 2014 WL 940205, at *1 (M.D.Pa. Mar. 11, 2014)("[I]t has been held that an ALJ's errors of law denote a lack of substantial evidence.")(alterations omitted); Burton v. Schweiker, 512 F. Supp. 913, 914 (W.D.Pa. 1981)("The Secretary's determination as to the status of a claim requires the correct application of the law to the facts."); see also Wright v. Sullivan, 900 F.2d 675, 678 (3d Cir. 1990)(noting that the scope of review on legal matters is plenary); Ficca, 901 F. Supp.2d at 536 ("[T]he court has plenary review of all legal issues . . . .").

Several fundamental legal propositions which flow from this deferential standard of review. First, when conducting this review "we are mindful that we must not substitute our own judgment for that of the fact finder." Zirnsak v. Colvin, 777 F.3d 607, 611 (3d Cir. 2014) (citing Rutherford, 399 F.3d at 552). Thus, we are enjoined to refrain from trying to re-weigh the evidence. Rather our

task is to simply determine whether substantial evidence supported the ALJ's findings. However, we must also ascertain whether the ALJ's decision meets the burden of articulation demanded by the courts to enable informed judicial review. Simply put, "this Court requires the ALJ to set forth the reasons for his decision." Burnett v. Comm'r of Soc. Sec. Admin., 220 F.3d 112, 119 (3d Cir. 2000). As the court of appeals has noted on this score:

> In Burnett, we held that an ALJ must clearly set forth the reasons for his decision. 220 F.3d at 119. Conclusory statements . . . are insufficient. The ALJ must provide a "discussion of the evidence" and an "explanation of reasoning" for his conclusion sufficient to enable meaningful judicial review. Id. at 120; see Jones v. Barnhart, 364 F.3d 501, 505 & n. 3 (3d Cir.2004). The ALJ, of course, need not employ particular "magic" words: "Burnett does not require the ALJ to use particular language or adhere to a particular format in conducting his analysis." Jones, 364 F.3d at 505.

Diaz v. Comm'r of Soc. Sec., 577 F.3d 500, 504 (3d Cir. 2009).

Thus, in practice ours is a twofold task. We must evaluate the substance of the ALJ's decision under a deferential standard of review, but we must also give that decision careful scrutiny to ensure that the rationale for the ALJ's actions is sufficiently articulated to permit meaningful judicial review.

## B.   Initial Burdens of Proof, Persuasion, and Articulation for the ALJ

To receive benefits under the Social Security Act by reason of disability, a claimant must demonstrate an inability to "engage in any substantial gainful

activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A); 42 U.S.C. §1382c(a)(3)(A); <u>see also</u> 20 C.F.R. §§404.1505(a), 416.905(a). To satisfy this requirement, a claimant must have a severe physical or mental impairment that makes it impossible to do his or her previous work or any other substantial gainful activity that exists in the national economy. 42 U.S.C. §423(d)(2)(A); 42 U.S.C. §1382c(a)(3)(B); 20 C.F.R. §§404.1505(a), 416.905(a). To receive benefits under Title II of the Social Security Act, a claimant must show that he or she contributed to the insurance program, is under retirement age, and became disabled prior to the date on which he or she was last insured. 42 U.S.C. §423(a); 20 C.F.R. §404.131(a).

In making this determination at the administrative level, the ALJ follows a five-step sequential evaluation process. 20 C.F.R. §§404.1520(a), 416.920(a). Under this process, the ALJ must sequentially determine: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals a listed impairment; (4) whether the claimant is able to do his or her past relevant work; and (5) whether the claimant is able to do any other work, considering his or her

age, education, work experience and residual functional capacity ("RFC"). 20 C.F.R. §§404.1520(a)(4), 416.920(a)(4).

Between Steps 3 and 4, the ALJ must also assess a claimant's residual functional capacity (RFC). RFC is defined as "that which an individual is still able to do despite the limitations caused by his or her impairment(s)." Burnett v. Comm'r of Soc. Sec., 220 F.3d 112, 121 (3d Cir. 2000) (citations omitted); see also 20 C.F.R. §§404.1520(e), 404.1545(a)(1), 416.920(e), 416.945(a)(1). In making this assessment, the ALJ considers all of the claimant's medically determinable impairments, including any non-severe impairments identified by the ALJ at step two of his or her analysis. 20 C.F.R. §§404.1545(a)(2), 416.945(a)(2).

There is an undeniable medical aspect to an RFC determination, since that determination entails an assessment of what work the claimant can do given the physical limitations that the claimant experiences. Yet, when considering the role and necessity of medical opinion evidence in making this determination, courts have followed several different paths. Some courts emphasize the importance of medical opinion support for an RFC determination and have suggested that "[r]arely can a decision be made regarding a claimant's residual functional capacity without an assessment from a physician regarding the functional abilities of the claimant." Biller v. Acting Comm'r of Soc. Sec., 962 F. Supp. 2d 761, 778–79

(W.D. Pa. 2013) (quoting <u>Gormont v. Astrue</u>, Civ. No. 11–2145, 2013 WL 791455 at \*7 (M.D. Pa. Mar. 4, 2013)). In other instances, it has been held that: "There is no legal requirement that a physician have made the particular findings that an ALJ adopts in the course of determining an RFC." <u>Titterington v. Barnhart</u>, 174 F. App'x 6, 11 (3d Cir. 2006). Further, courts have held in cases where there is no evidence of any credible medical opinion supporting a claimant's allegations of disability that "the proposition that an ALJ must always base his RFC on a medical opinion from a physician is misguided." <u>Cummings v. Colvin</u>, 129 F. Supp. 3d 209, 214–15 (W.D. Pa. 2015).

These seemingly discordant legal propositions can be reconciled by evaluation of the factual context of these decisions. Those cases which emphasize the importance of medical opinion support for an RFC assessment typically arise in the factual setting where a well-supported medical source has opined regarding limitations which would support a disability claim, but an ALJ has rejected the medical opinion which supported a disability determination based upon a lay assessment of other evidence. In this setting, these cases simply restate the commonplace idea that medical opinions are entitled to careful consideration when making a disability determination, particularly when those opinions support a finding of disability. In contrast, when an ALJ is relying upon other evidence, such

as contrasting clinical or opinion evidence or testimony regarding the claimant's activities of daily living, to fashion an RFC courts have adopted a more pragmatic view and have sustained the ALJ's exercise of independent judgment based upon all of the facts and evidence. See Titterington v. Barnhart, 174 F. App'x 6, 11 (3d Cir. 2006); Cummings v. Colvin, 129 F. Supp. 3d 209, 214–15 (W.D. Pa. 2015). In either event, once the ALJ has made this determination, our review of the ALJ's assessment of the plaintiff's RFC is deferential, and that RFC assessment will not be set aside if it is supported by substantial evidence. Burns v. Barnhart, 312 F.3d 113, 129 (3d Cir. 2002); see also Metzger v. Berryhill, No. 3:16-CV-1929, 2017 WL 1483328, at *5 (M.D. Pa. Mar. 29, 2017), report and recommendation adopted sub nom. Metzgar v. Colvin, No. 3:16-CV-1929, 2017 WL 1479426 (M.D. Pa. Apr. 21, 2017); Rathbun v. Berryhill, No. 3:17-CV-00301, 2018 WL 1514383, at *6 (M.D. Pa. Mar. 12, 2018), report and recommendation adopted, No. 3:17-CV-301, 2018 WL 1479366 (M.D. Pa. Mar. 27, 2018).

At Steps 1 through 4, the claimant bears the initial burden of demonstrating the existence of a medically determinable impairment that prevents him or her in engaging in any of his or her past relevant work.  42 U.S.C. §423(d)(5); 42 U.S.C.

§1382c(a)(3)(H)(i)(incorporating 42 U.S.C. §423(d)(5) by reference); 20 C.F.R. §§404.1512, 416.912;[2] <u>Mason</u>, 994 F.2d at 1064.

Once this burden has been met by the claimant, it shifts to the Commissioner at Step 5 to show that jobs exist in significant number in the national economy that the claimant could perform that are consistent with the claimant's age, education, work experience and RFC.  20 C.F.R. §§404.1512(f), 416.912(f); <u>Mason</u>, 994 F.2d at 1064.

The ALJ's disability determination must also meet certain basic substantive requisites. Most significant among these legal benchmarks is a requirement that the ALJ adequately explain the legal and factual basis for this disability determination. Thus, in order to facilitate review of the decision under the substantial evidence standard, the ALJ's decision must be accompanied by "a clear and satisfactory explication of the basis on which it rests." <u>Cotter v. Harris</u>, 642 F.2d 700, 704 (3d Cir. 1981).  Conflicts in the evidence must be resolved and the ALJ must indicate

---

[2] New versions of 20 C.F.R. §404.1512, and 20 C.F.R. §416.912 were published at about the time the ALJ issued the decision in this case.  After reviewing these changes, we note that they do not materially alter the proposition that a claimant bears the initial burden of demonstrating that he or she cannot engage in other work, or that the Commissioner must provide evidence about the existence of other work in the national economy that the claimant can perform.  <u>See</u> 20 C.F.R. §404.1512(a)(1)(effective Mar. 27, 2017); 20 C.F.R. §404.1512(b)(3)(effective Mar. 27, 2017); 20 C.F.R. §416.912(a)(1)(effective Mar. 27, 2017); 20 C.F.R. §416.912(b)(3)(effective Mar. 27, 2017).

which evidence was accepted, which evidence was rejected, and the reasons for rejecting certain evidence. Id. at 706-707. In addition, "[t]he ALJ must indicate in his decision which evidence he has rejected and which he is relying on as the basis for his finding." Schaudeck v. Comm'r of Soc. Sec., 181 F. 3d 429, 433 (3d Cir. 1999).

## C. Legal Benchmarks for the ALJ's Assessment of Medical Opinion Evidence

The Commissioner's regulations also set standards for the evaluation of medical evidence, and define medical opinions as "statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [a claimant's] impairment(s), including [a claimant's] symptoms, diagnosis and prognosis, what [a claimant] can still do despite impairments(s), and [a claimant's] physical or mental restrictions." 20 C.F.R. §404.1527(a)(2). Regardless of its source, the ALJ is required to evaluate every medical opinion received. 20 C.F.R. §404.1527(c).

In deciding what weight to accord to competing medical opinions and evidence, the ALJ is guided by factors outlined in 20 C.F.R. §404.1527(c). "The regulations provide progressively more rigorous tests for weighing opinions as the ties between the source of the opinion and the individual become weaker." SSR 96-6p, 1996 WL 374180 at *2. Treating sources have the closest ties to the

19

claimant, and therefore their opinions generally entitled to more weight. <u>See</u> 20 C.F.R. §404.1527(c)(2)("Generally, we give more weight to opinions from your treating sources..."); 20 C.F.R. §404.1502 (defining treating source). Under some circumstances, the medical opinion of a treating source may even be entitled to controlling weight. 20 C.F.R. §§04.1527(c)(2); <u>see also</u> SSR 96-2p, 1996 WL 374188 (explaining that controlling weight may be given to a treating source's medical opinion only where it is well-supported by medically acceptable clinical and laboratory diagnostic techniques, and it is not inconsistent with the other substantial evidence in the case record).

Where no medical source opinion is entitled to controlling weight, the Commissioner's regulations direct the ALJ to consider the following factors, where applicable, in deciding the weight given to any non-controlling medical opinions: length of the treatment relationship and frequency of examination; nature and extent of the treatment relationship; the extent to which the source presented relevant evidence to support his or her medical opinion, and the extent to which the basis for the source's conclusions were explained; the extent to which the source's opinion is consistent with the record as a whole; whether the source is a specialist; and, any other factors brought to the ALJ's attention. 20 C.F.R. §404.1527(c).

At the initial level of administrative review, State agency medical and psychological consultants may act as adjudicators. See SSR 96-5p, 1996 WL 374183 at *4. As such, they do not express opinions; they make findings of fact that become part of the determination. Id. However, 20 C.F.R. §404.1527(e) provides that at the ALJ and Appeals Council levels of the administrative review process, findings by nonexamining State agency medical and psychological consultants should be evaluated as medical opinion evidence. Therefore, ALJs must consider these opinions as expert opinion evidence by nonexamining physicians and must address these opinions in their decisions. SSR 96-5p, 1996 WL 374183 at *6. Opinions by State agency consultants can be given weight "only insofar as they are supported by evidence in the case record." SSR 96-6p, 1996 WL 374180 at *2. In appropriate circumstances, opinions from nonexamining State agency medical consultants may be entitled to greater weight than the opinions of treating or examining sources. Id. at *3.

Oftentimes, as in this case, an ALJ must evaluate medical opinions and records tendered by both treating and non-treating sources. Judicial review of this aspect of ALJ decision-making is guided by several settled legal tenets. First, when presented with a disputed factual record, it is well-established that "[t]he ALJ – not treating or examining physicians or State agency consultants – must make the

ultimate disability and RFC determinations." <u>Chandler v. Comm'r of Soc. Sec.</u>, 667 F.3d 356, 361 (3d Cir. 2011). Thus, "[w]here, . . . , the opinion of a treating physician conflicts with that of a non-treating, non-examining physician, the ALJ may choose whom to credit but 'cannot reject evidence for no reason or for the wrong reason.'" <u>Morales v. Apfel,</u> 225 F.3d 310, 317 (3d Cir. 2000) (quoting <u>Mason</u>, 994 F.2d at 1066). Therefore, provided that the decision is accompanied by an adequate, articulated rationale, it is the province and the duty of the ALJ to choose which medical opinions and evidence deserve greater weight.

On this score, as we have also noted:

[T]reating physician opinions do not control this determination. State agency doctors are also entitled to have their opinions given careful consideration. As the court of appeals has observed:

"[t]he law is clear ... that the opinion of a treating physician does not bind the ALJ on the issue of functional capacity," <u>Brown v. Astrue</u>, 649 F.3d 193, 197 n. 2 (3d Cir. 2011).State agent opinions merit significant consideration as well. <u>See</u> SSR 96-6p ("Because State agency medical and psychological consultants ... are experts in the Social Security disability programs ... 20 C.F.R. §§ 404.1527(f) and 416.927(f) require [ALJs] ... to consider their findings of fact about the nature and severity of an individual's impairment(s)...."). <u>Chandler v. Comm'r of Soc. Sec.</u>, 667 F.3d 356, 361 (3d Cir. 2011).

<u>Deiter v. Berryhill</u>, No. 3:16-CV-2146, 2018 WL 1322067, at *6 (M.D. Pa. Feb. 5, 2018), <u>report and recommendation adopted,</u> No. 3:16-CV-2146, 2018 WL 1315655

--

(M.D. Pa. Mar. 14, 2018). See Shoemaker v. Colvin, No. 3:16-CV-2304, 2018 WL 3245011, at *10 (M.D. Pa. Apr. 5, 2018), report and recommendation adopted sub nom. Shoemaker v. Berryhill, No. 3:16-CV-2304, 2018 WL 3239903 (M.D. Pa. July 3, 2018).

Further, in making this assessment of medical evidence:

> An ALJ is [also] entitled generally to credit parts of an opinion without crediting the entire opinion. See Thackara v. Colvin, No. 1:14–CV–00158–GBC, 2015 WL 1295956, at *5 (M.D.Pa. Mar. 23, 2015); Turner v. Colvin, 964 F. Supp. 2d 21, 29 (D.D.C. 2013) (agreeing that "SSR 96–2p does not prohibit the ALJ from crediting some parts of a treating source's opinion and rejecting other portions"); Connors v. Astrue, No. 10–CV–197–PB, 2011 WL 2359055, at *9 (D.N.H. June 10, 2011). It follows that an ALJ can give partial credit to all medical opinions and can formulate an RFC based on different parts from the different medical opinions. See e.g., Thackara v. Colvin, No. 1:14–CV–00158–GBC, 2015 WL 1295956, at *5 (M.D. Pa. Mar. 23, 2015).

Durden v. Colvin, 191 F. Supp. 3d 429, 455 (M.D. Pa. 2016).

### D. Legal Benchmarks for the ALJ's Assessment of a Claimant's Alleged Symptoms

The interplay between the deferential substantive standard of review that governs Social Security appeals, and the requirement that courts carefully assess whether an ALJ has met the standards of articulation required by law, is also illustrated by those cases which consider analysis of a claimant's reported pain.

When evaluating lay testimony regarding a claimant's reported degree of pain and

disability, we are reminded that:

> [T]he ALJ must necessarily make certain credibility determinations, and this Court defers to the ALJ's assessment of credibility. See Diaz v. Comm'r, 577 F.3d 500, 506 (3d Cir.2009) ("In determining whether there is substantial evidence to support an administrative law judge's decision, we owe deference to his evaluation of the evidence [and] assessment of the credibility of witnesses...."). However, the ALJ must specifically identify and explain what evidence he found not credible and why he found it not credible. Adorno v. Shalala, 40 F.3d 43, 48 (3d Cir.1994) (citing Stewart v. Sec'y of Health, Education and Welfare, 714 F.2d 287, 290 (3d Cir.1983)); see also Stout v. Comm'r, 454 F.3d 1050, 1054 (9th Cir.2006) (stating that an ALJ is required to provide "specific reasons for rejecting lay testimony"). An ALJ cannot reject evidence for an incorrect or unsupported reason. Ray v. Astrue, 649 F.Supp.2d 391, 402 (E.D.Pa.2009) (quoting Mason v. Shalala, 994 F.2d 1058, 1066 (3d Cir.1993)).

Zirnsak v. Colvin, 777 F.3d 607, 612–13 (3d Cir. 2014).

> Yet, it is also clear that:

> Great weight is given to a claimant's subjective testimony only when it is supported by competent medical evidence. Dobrowolsky v. Califano, 606 F.2d 403, 409 (3d Cir. 1979); accord Snedeker v. Comm'r of Soc. Sec., 244 Fed.Appx. 470, 474 (3d Cir. 2007). An ALJ may reject a claimant's subjective testimony that is not found credible so long as there is an explanation for the rejection of the testimony. Social Security Ruling ("SSR") 96–7p; Schaudeck v. Comm'r of Social Security, 181 F.3d 429, 433 (3d Cir. 1999). Where an ALJ finds that there is an underlying medically determinable physical or mental impairment that could reasonably be expected to produce the individual's pain or other symptoms, however, the severity of which is not substantiated by objective medical evidence, the ALJ must make a finding on the credibility of the individual's statements based on a consideration of the entire case record.

McKean v. Colvin, 150 F. Supp. 3d 406, 415–16 (M.D. Pa. 2015)(footnotes omitted). Thus, we are instructed to review an ALJ's evaluation of a claimant's subjective reports of pain under a standard of review which is deferential with respect to the ALJ's well-articulated findings, but imposes a duty of clear articulation upon the ALJ so that we may conduct meaningful review of the ALJ's conclusions.

In the same fashion that medical opinion evidence is evaluated, the Social Security Rulings and Regulations provide a framework under which the severity of a claimant's reported symptoms are to be considered. 20 C.F.R. §§ 404.1529, 416.929; SSR 16–3p. It is important to note that though the "statements of the individual concerning his or her symptoms must be carefully considered, the ALJ is not required to credit them." Chandler v. Comm'r of Soc. Sec., 667 F.3d 356, 363 (3d. Cir. 2011) (referencing 20 C.F.R. §404.1529(a) ("statements about your pain or other symptoms will not alone establish that you are disabled."). It is well-settled in the Third Circuit that "[a]llegations of pain and other subjective symptoms must be supported by objective medical evidence." Hantraft v. Apfel, 181 F.3d 358, 362 (3d Cir. 1999) (referring to 20 C.F.R. §404.1529). When evaluating a claimant's symptoms, the ALJ must follow a two-step process in

which the ALJ resolves whether a medically determinable impairment could be the cause of the symptoms alleged by the claimant, and subsequently must evaluate the alleged symptoms in consideration of the record as a whole. SSR 16-3p.

First, symptoms, such as pain or fatigue, will only be considered to affect a claimant's ability to perform work activities if such symptoms result from an underlying physical or mental impairment that has been demonstrated to exist by medical signs or laboratory findings. 20 C.F.R. §§ 404.1529(b), 416.929(b); SSR 16–3p. During the second step of this credibility assessment, the ALJ must determine whether the claimant's statements about the intensity, persistence or functionally limiting effects of his or her symptoms are substantiated based on the ALJ's evaluation of the entire case record. 20 C.F.R. § 404.1529(c), 416.929(c); SSR 16–3p. This includes, but is not limited to: medical signs and laboratory findings, diagnosis and other medical opinions provided by treating or examining sources, and other medical sources, as well as information concerning the claimant's symptoms and how they affect his or her ability to work. Id. The Social Security Administration has recognized that individuals may experience their symptoms differently and may be limited by their symptoms to a greater or lesser extent than other individuals with the same medical impairments, signs, and laboratory findings. SSR 16–3p.

Thus, to assist in the evaluation of a claimant's subjective symptoms, the Social Security Regulations identify seven factors which may be relevant to the assessment of the severity or limiting effects of a claimant's impairment based on a claimant's symptoms. 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3). These factors include: activities of daily living; the location, duration, frequency, and intensity of the claimant's symptoms; precipitating and aggravating factors; the type, dosage, effectiveness, and side effects of any medication the claimant takes or has taken to alleviate his or her symptoms; treatment, other than medication that a claimant has received for relief; any measures the claimant has used to relieve his or her symptoms; and, any other factors concerning the claimant's functional limitations and restrictions. Id.; see George v. Colvin, No. 4:13–CV–2803, 2014 WL 5449706, at *4 (M.D.Pa. Oct. 24, 2014); Martinez v. Colvin, No. 3:14-CV-1090, 2015 WL 5781202, at *8–9 (M.D. Pa. Sept. 30, 2015).

E.    The ALJ's Decision in this Case is Supported by Substantial Evidence

As we have noted, in this case Boylstein attacks the ALJ's decision on three grounds, arguing that: (1) the ALJ improperly assigned little weight to the treating source opinion of Dr. Greevy; (2) the ALJ's residual functional capacity assessment is deficient because it is not fully supported in every respect by a medical opinion, thus creating an "evidentiary deficit" in Boylstein's view; and (3)

the ALJ erred in partially discounting Boylstein's testimony regarding the severity and persistence of his symptoms.

Turning first to Boylstein's argument that the ALJ erred in discounting the opinion of Boylstein's treating source, Dr. Greevy, in this case the ALJ was presented with two competing medical opinions, Dr. Greevy's opinion and the opinion of the state agency consulting, examining expert, Dr. DeWulf. Reviewing these two opinions, and considering them in light of the clinical evidence, as well as Boylstein's reported activities of daily living, the ALJ found that Dr. DeWulf's opinion drew greater support from the objective evidence than did the more extreme and limiting view expressed by Dr. Greevy.

The ALJ is permitted, and is often required to make such judgments. Further, when an ALJ assesses competing medical opinions:

> "[t]he law is clear ... that the opinion of a treating physician does not bind the ALJ on the issue of functional capacity," Brown v. Astrue, 649 F.3d 193, 197 n. 2 (3d Cir. 2011).State agent opinions merit significant consideration as well. See SSR 96-6p ("Because State agency medical and psychological consultants ... are experts in the Social Security disability programs ... 20 C.F.R. §§ 404.1527(f) and 416.927(f) require [ALJs] ... to consider their findings of fact about the nature and severity of an individual's impairment(s)...."). Chandler v. Comm'r of Soc. Sec., 667 F.3d 356, 361 (3d Cir. 2011).

Deiter v. Berryhill, No. 3:16-CV-2146, 2018 WL 1322067, at *6 (M.D. Pa. Feb. 5, 2018), report and recommendation adopted, No. 3:16-CV-2146, 2018 WL 1315655

(M.D. Pa. Mar. 14, 2018). Thus, the ALJ was completely entitled to choose to follow the opinion of a state agency consulting expert, particularly when that opinion was more congruent with the objective medical evidence and with the proof as it related to Boylstein's daily activities. There was no error here.

Moreover, in determining the weight to be given to a treating source opinion, it is also well-settled that an ALJ may discount that opinion when it conflicts with other objective tests or examination results. Johnson v. Comm'r of Soc. Sec., 529 F.3d 198, 202–03 (3d Cir. 2008). Likewise, an ALJ may conclude that discrepancies between the treating source's medical opinion, and the doctor's actual treatment notes, justifies giving a treating source opinion little weight in a disability analysis. Torres v. Barnhart, 139 F.App'x. 411, 415 (3d Cir. 2005). Finally, "an opinion from a treating source about what a claimant can still do which would seem to be well-supported by the objective findings would not be entitled to controlling weight if there was other substantial evidence that the claimant engaged in activities that were inconsistent with the opinion." Tilton v. Colvin, 184 F. Supp. 3d 135, 145 (M.D. Pa. 2016). See Matcheson v. Colvin, No. 1:16-CV-671, 2017 WL 3910778, at *6 (M.D. Pa. Aug. 8, 2017), report and recommendation adopted sub nom. Matcheson v. Berryhill, No. 1:16-CV-671, 2017 WL 3892054 (M.D. Pa. Sept. 6, 2017). Here, the ALJ specifically concluded

that the very restrictive opinions authored by Dr. Greevy were inconsistent with other clinical records and treatment notes, and were contradicted by Boylstein's own activities of daily living. Substantial evidence supported the ALJ's findings in each of these regards. Accordingly, this decision to give less weight to Dr. Greevy's opinion was appropriate and may not now be disturbed on appeal.

In addition, Boylstein argues that there was an "evidentiary deficit" in the ALJ's RFC assessment, because the ALJ fashioned an RFC which was based upon a determination that Dr. Greevy's opinion deserved little weight, but only afforded partial weight to the opinion of Dr. DeWulf. Thus, the premise underlying this argument is the idea that an ALJ's residual functional capacity assessment must be accompanied in every instance by a medical opinion, and the failure to cite a medical opinion supporting every aspect of the RFC creates a fatal evidentiary deficit. We disagree with this premise, which runs contrary to case law which recognizes that: "There is no legal requirement that a physician have made the particular findings that an ALJ adopts in the course of determining an RFC." Titterington v. Barnhart, 174 F. App'x 6, 11 (3d Cir. 2006). Thus, "the proposition that an ALJ must always base his RFC on a medical opinion from a physician is misguided." Cummings v. Colvin, 129 F. Supp. 3d 209, 214–15 (W.D. Pa. 2015). Instead, in fashioning an RFC the ALJ may ALJ is rely upon other evidence such

as contrasting clinical or opinion evidence or testimony regarding the claimant's activities of daily living, and courts have sustained the ALJ's exercise of independent judgment based upon all of the facts and evidence. See Titterington v. Barnhart, 174 F. App'x 6, 11 (3d Cir. 2006); Cummings v. Colvin, 129 F. Supp. 3d 209, 214–15 (W.D. Pa. 2015).

In this case, the RFC formulated by the ALJ reflected a synthesis of the contrasting medical opinions, the clinical records, and Boylstein's own proven capabilities as reflected by his self-reported activities of daily living. Each aspect of this RFC drew evidentiary support from these various sources, and the basis for the ALJ's assessment was adequately explained in the decision denying Boylstein's application for benefits. Mindful of the fact that our review of the ALJ's assessment of the plaintiff's RFC is deferential, and that RFC assessment will not be set aside if it is supported by substantial evidence, we conclude that there are no grounds to set aside the residual functional capacity assessment made here, which was completely consistent with Boylstein's own description of his capabilities. Burns v. Barnhart, 312 F.3d 113, 129 (3d Cir. 2002); see also Metzger v. Berryhill, No. 3:16-CV-1929, 2017 WL 1483328, at *5 (M.D. Pa. Mar. 29, 2017), report and recommendation adopted sub nom. Metzgar v. Colvin, No. 3:16-CV-1929, 2017 WL 1479426 (M.D. Pa. Apr. 21, 2017); Rathbun v. Berryhill,

No. 3:17-CV-00301, 2018 WL 1514383, at *6 (M.D. Pa. Mar. 12, 2018), report and recommendation adopted, No. 3:17-CV-301, 2018 WL 1479366 (M.D. Pa. Mar. 27, 2018).

Finally, the ALJ's symptom evaluation and credibility determinations, which found that Boylstein's testimony was only partially credible, are also supported by substantial evidence. In this regard, we are cautioned that we should "defer[] to the ALJ's assessment of credibility" provided that the ALJ "specifically identif[ies] and explain[s] what evidence he found not credible and why he found it not credible." Zirnsak v. Colvin, 777 F.3d 607, 612–13 (3d Cir. 2014). In this case, the ALJ explained that Boylstein's testimony concerning the severity of his symptoms was not entirely credible because it conflicted with objective clinical results, the state agency doctor's expert opinion, and Boylstein's activities of daily living. Given the deference owed to this credibility determination, that decision—which is supported by substantial evidence—also should not be disturbed on appeal.

In sum, the ALJ's assessment of the evidence in this case complied with the dictates of the law and was supported by substantial evidence. This is all that the law requires, and all that a claimant like Boylstein can demand in a disability proceeding. Thus, notwithstanding the argument that this evidence could have been further explained, or might have been viewed in a way which would have also

32

supported a different finding, we are obliged to affirm this ruling once we find that it is "supported by substantial evidence, 'even [where] this court acting *de novo* might have reached a different conclusion.'" <u>Monsour Med. Ctr. v. Heckler</u>, 806 F.2d 1185, 1190–91 (3d Cir. 1986) (quoting <u>Hunter Douglas, Inc. v. NLRB</u>, 804 F.2d 808, 812 (3d Cir. 1986)). Accordingly, under the deferential standard of review that applies to appeals of Social Security disability determinations we conclude that substantial evidence supported the ALJ's evaluation of this case. Therefore, we will affirm this decision, direct that judgment be entered in favor of the defendant, and instruct the clerk to close this case.

## IV. <u>Conclusion</u>

Accordingly, for the foregoing reasons, the decision of the Commissioner is **AFFIRMED**, and the clerk is directed that judgment be entered in favor of the defendant, and that this case be closed.

An appropriate order follows.

So ordered this 16th day of November, 2018.

*s/Martin C. Carlson*
Martin C. Carlson
United States Magistrate Judge